UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
NORTH JERSEY MEDIA GROUP INC.,          :
                                        :
                     Plaintiff,         :
                                        :          **REDACTED**
        - against -                     :          **OPINION AND ORDER**
                                        :          13 Civ. 7153 (ER)
JEANINE PIRRO and FOX NEWS NETWORK, LLC,:
                                        :
                     Defendants.        :
-----------------------------------------------------------------x

Ramos, D.J.:

      Plaintiff North Jersey Media Group Inc. ("Plaintiff" or "NJMG") brings this action against Jeanine Pirro and Fox News Network, LLC ("Fox News") (collectively, "Defendants") under the Copyright Act, 17 U.S.C. § 101, alleging that Defendants infringed on Plaintiff's copyright in its now iconic photograph of three firefighters raising the American flag at the ruins of the World Trade Center site on September 11, 2001 (the "Work"). On September 11, 2013, Fox News posted a photograph that juxtaposed the Work with the classic World War II photograph of U.S. Marines raising the American flag on Iwo Jima[1] (the "Combined Image") on a Facebook page associated with Fox News' television program *Justice with Judge Jeanine* (the "Pirro Facebook Page"). Pending before the Court is Defendants' motion to amend their Answers[2] by adding the affirmative defense of license, and to modify the Civil Case Discovery Plan and Scheduling Order accordingly. Doc. 46. For the reasons set forth below, Defendants' motion is DENIED.

---

[1] This photograph, taken by Joe Rosenthal, is entitled *Raising the Flag on Iwo Jima*.

[2] While Defendants are jointly represented, on March 28, 2014, they separately filed their Answers to the Amended Complaint. Doc. 13, 15.

## I. Factual Background[3]

According to Defendants, since its launch in 1996, Fox News has maintained a relationship with the Associated Press (the "AP"), a not-for-profit cooperative that licenses content to media entities. Declaration of Dianne Brandi ("Brandi Decl."), ¶ 2. Fox News subscribes to various AP services, including the AP Images "photo bank." *Id.* ¶¶ 2-3. This photo bank contains thousands of photographs for use by subscribers and members such as Fox News. *Id.* ¶ 3.

Pursuant to its most recent written agreements with the AP,

However, according to Defendants, Fox News and the AP have continued their course of dealing, uninterrupted, through the present day. *Id.* Specifically, Fox News continues to access and use AP Images content on a daily basis; the AP continues to invoice Fox News for its use of the service; and Fox News continues to pay those invoices. *Id.*

Defendants claim that in April 2014, during the course of discovery in the instant action, .[4]

---

[3] By Amended Opinion and Order dated February 10, 2015, the Court denied Defendants' motion for summary judgment on the grounds of fair use. Doc. 71. The facts of this case are discussed in the Opinion and Order, familiarity with which is presumed.

[4] On April 18, 2014, Plaintiff produced a partial transcript of the deposition of Jennifer Borg, NJMG's Vice President, General Counsel and Corporate Secretary, in the matter of *North Jersey Media Group, Inc. v. CafePress Inc. et al.*, No. 13 Civ. 3932 (ALC), a separate case involving a different defendant who also allegedly infringed on the Work. Hanswirth Decl., ¶ 7. According to Defendants, from Ms. Borg's deposition testimony. *Id.*

Plaintiff, on the other hand, contends that Fox News should have been aware of this possibility even before the commencement of this litigation based on the AP's issuance of two sublicenses of the Work to Fox News on July 29, 2013, for use on one of its other programs; or no later than January 10, 2014, when, during a pre-motion

Declaration of Dori Ann Hanswirth ("Hanswirth Decl."), ¶ 7. On May 1, 2014, Defendants' counsel requested from Plaintiff's counsel a copy of NJMG's current license agreement with the AP, which Plaintiff provided the following day. *Id.* ¶¶ 8-9. On May 13, 2014, Fox News received confirmation from the AP that the Work was part of the AP Images service. Brandi Decl., ¶ 8. On June 4, 2014, Dianne Brandi, Fox News' Executive Vice President, Legal and Business Affairs, [redacted] (the "Retroactive License") [redacted]

## II. Procedural Background

Plaintiff commenced this action on October 9, 2013, by filing a Complaint against Defendant Pirro. Doc. 1. On February 20, 2014, Plaintiff filed the Amended Complaint, adding Fox News as a defendant. Doc. 12. Defendants separately answered the Amended Complaint on March 28, 2014. Doc. 13, 15. Neither of the Defendants' Answers contained the affirmative defense of license. Pursuant to the Civil Case Discovery Plan and Scheduling Order entered onto the docket on February 18, 2014, the deadline for amended pleadings in the instant action was April 11, 2014. Doc. 11. A pre-motion conference was held on June 20, 2014, and the instant motion was filed on July 15, 2014. Doc. 46.

---

conference in this action, Plaintiff's counsel stated that the Work has been extensively licensed; or earlier in April 2014, based on Defendants' counsel's attendance at the trial of the *CafePress* matter. Declaration of William Dunnegan In Opposition to Defendants' Motion for Leave to Amend Their Answer to Add the Defense of License, ¶ 12; Pl. Opp. Mem. L. 19.

**III. Legal Standard**

Federal Rule of Civil Procedure 15 states that a court should freely grant leave to amend a pleading when justice so requires. Fed. R. Civ. P. 15(a)(2). "Generally, '[a] district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party.'" *Holmes v. Grubman*, 568 F.3d 329, 334 (2d Cir. 2009) (quoting *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007)). Where a scheduling order governs amendments to the complaint, the lenient standard under Rule 15(a) must be balanced against the requirement under Rule 16(b) that the Court's scheduling order shall not be modified except upon a showing of good cause. *Id.* Here, the Civil Case Discovery Plan and Scheduling Order set an April 11, 2014 deadline for amended pleadings. Doc. 11. Defendants sought leave to amend their Answers after that date. Accordingly, the Court will analyze Plaintiffs' motion with reference to both Rule 15(a) and Rule 16(b).

"[W]hile diligence is 'the primary consideration' in determining whether the moving party satisfies the good cause requirement of Rule 16(b), a district court 'also may consider other relevant factors including, in particular, whether allowing the amendment of the pleading at this stage of the litigation will prejudice [non-movants]." *Grant v. Citibank (S.D.), N.A.*, No. 10 Civ. 2955 (KNF), 2010 WL 5187754, at *7 (S.D.N.Y. Dec. 6, 2010) (quoting *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 244 (2d Cir. 2007)). However, the good cause standard is not satisfied when the proposed amendment rests on information that the party knew, or should have known, in advance of the deadline. *iMedicor, Inc. v. Access Pharm., Inc.*, 290 F.R.D. 50, 52 (S.D.N.Y. 2013) (internal citation omitted).

"After the moving party demonstrates diligence under Rule 16, the Rule 15 standard applies to determine whether the amendment is proper." *Grant*, 2010 WL 5187754, at *7. "A

decision to grant or deny a motion to amend is within the sound discretion of the trial court." *Krumme v. WestPoint Stevens Inc.*, 143 F.3d 71, 88 (2d Cir. 1998), *cert. denied*, 525 U.S. 1041 (1998).

**IV. Discussion**

According to Defendants, [REDACTED] Fox News still maintained a license to use all of the images in the AP Images photo bank, including the Work, on September 11, 2013, based on its course of dealings with the AP since the expiration. Defendants alternatively argue that Fox News was authorized to use the Work pursuant to the Retroactive License.

Plaintiff contends principally that the proposed amendments are futile because Defendants have only the Retroactive License to use the Work on September 11, 2013, and, according to NJMG, retroactive copyright licenses are unenforceable in the Second Circuit. *See Davis v. Blige*, 505 F.3d 90 (2d Cir. 2007), *cert. denied*, 555 U.S. 822 (2008). In addition, Plaintiff argues that Fox News' written agreements would not have authorized the use of the Work here in any event because, *inter alia*, the Work was impermissibly altered before its posting on the Pirro Facebook Page. Finally, NJMG claims that it would be prejudiced by the delay in the resolution of this action.

**a. Good Cause**

The Court finds that Defendants have not proceeded with sufficient diligence to amend the Scheduling Order. *Cf. Kassner*, 496 F.3d at 244 (noting that diligence is the primary consideration in the good cause analysis). In the first place, Defendants do not, and cannot, make the argument that they were unaware of the facts giving rise to its purported implied contract with the AP to access images from the AP's photo bank. Defendants claim to have

learned in April 2014, during the course of discovery, [redacted]. According to Defendants, they exercised diligence by promptly requesting a copy of Plaintiff's licensing agreement with the AP in early May 2014; investigating NJMG's licensing of the Work; and requesting a pre-motion conference soon thereafter, on June 12, 2014. Doc. 26. While Defendants' actions during the two-month period following their supposed revelation in April 2014 would, under ordinary circumstances, likely demonstrate diligence, Defendants cannot escape the fact that they knew—or should have known—the basis for the proposed amendment prior to the commencement of this litigation.

It is undisputed that Fox News obtained two sublicenses from the AP for use of the Work on July 29, 2013. Defendants therefore should have raised the affirmative defense of license in their Answers to the Amended Complaint, which were filed on March 28, 2014. There is no basis to excuse Defendants' not raising the issue until June 2014, nearly one year after the issuance of the sublicenses to Fox News, and months after the deadline for amended pleadings. *See iMedicor*, 290 F.R.D. at 52 (observing that good cause is not shown where the party knew or should have known the factual predicate for the amendment in advance of the deadline). In *Apollo Theater Foundation, Inc. v. Western International Syndication*, No. 02 Civ. 10037 (DLC), 2005 WL 1041141, at *19 (S.D.N.Y. May 5, 2005), the court denied plaintiff's motion for leave to file a second amended complaint to add a claim for breach of fiduciary duty after the close of discovery. There, the plaintiff claimed to have learned the basis for the amendment during a deposition taken on September 14, 2004. *Id.* However, the court noted that plaintiff was aware of the basis for its proposed amendment—defendant's failure to supply certain financial information—since at least April 2002. *Id.* Accordingly, because the plaintiff could have raised the claim based on information within its control *even before the initiation of the*

*action*, the court did not find good cause for the amendment. *Id.* Similarly, in *Parker v. Columbia Pictures Industries*, 204 F.3d 326, 340-41 (2d Cir. 2000), the Second Circuit affirmed the denial of a motion to amend the complaint where plaintiff was charged with knowledge of the proposed contract claim against his former employer at the start of his employment, despite plaintiff's claim that he learned of the policy from defendant's motion for summary judgment. And in *Point 4 Data Corp. v. Tri-State Surgical Supply & Equipment, Ltd.*, No. 11 Civ. 726 (CBA) (RLM), 2012 WL 2458060, at *7 (E.D.N.Y. June 27, 2012), the court denied plaintiffs' motion to amend the complaint to add new defendants where the plaintiffs were provided "strong documentary evidence" of the basis for the motion "at the very outset of the case." *See also iMedicor*, 290 F.R.D. at 53 (denying motion to amend the complaint where plaintiff should have known to raise certain claims eight months before request for leave, despite plaintiff's counsel's claim that he needed discovery in order to bring the claims); *246 Sears Rd. Realty Corp. v. Exxon Mobil Corp.*, No. 09 Civ. 889 (NGG) (JMA), 2012 WL 4174862, at *10 (E.D.N.Y. Sept. 18, 2012) (finding that plaintiff could not establish good cause for amendments where plaintiff knew, or should have known, the "crux" of the proposed fraud claim based on a letter sent less than two months before the deadline for amended pleadings). Because Defendants knew, or should have known, about the possibility of obtaining a license through the AP, they cannot demonstrate good cause for the amendment here.

Defendants' argument in support of their supposed diligence is unpersuasive. According to Defendants, despite the AP's issuance of two sublicenses to Fox News in July 2013, they claim that their counsel learned about these sublicenses while investigating matters during discovery. Defs. Reply Mem. L. 9. Defendants assert that it is therefore "baseless to suggest that counsel must have learned about its prior use of the Work, one time, on an unrelated Fox

News program, any sooner than it did." *Id.* However, because *the party* here plainly knew of the factual predicate for the amendment before the commencement of the litigation, and nearly one year before counsel raised the issue, that knowledge can be imputed to its counsel. The lone case on which Defendants rely for their argument is inapposite. In *Sotheby's International Realty, Inc. v. Black*, No. 06 Civ. 1725 (GEL), 2007 WL 4438145, at *1 (S.D.N.Y. Dec. 17, 2007), the court granted defendant leave to amend his answer to add an affirmative defense based on the plaintiff's alleged failure to obtain defendant's consent to act as a dual agent in a real estate transaction. There, the court found that the plaintiff failed to demonstrate prejudice even though the defendant waited to file the motion to amend until weeks after the close of discovery and nearly three months after the revelation of certain facts relating to the dual agency role. *Id.* at *5. Based on defendant's counsel's stated interest in learning additional facts from the deposition of the defendant's primary broker, the court observed that it was reasonable for counsel to investigate a potential claim fully before seeking to advance it in a pleading. *Id.* That is not the situation here. First, the court in *Black* did not analyze the defendant's request for leave under a Rule 16(b) good cause analysis, but instead under the more permissive Rule 15(a) standard. *See id.* at *1. The difference between these two standards is significant. *See, e.g.*, *Oppenheimer & Co. v. Metal Mgmt., Inc.*, No. 08 Civ. 3697 (LTS) (FM), 2009 WL 2432729, at *4 (S.D.N.Y. July 31, 2009) (observing that while the court's denial of leave to amend answer may seem harsh because discovery was not complete and the prejudice to plaintiff may well have been minimal, "to allow the lack of prejudice to trump [defendant's] lack of good cause would be to ignore the important distinction between Rules 15(a) and 16(b)"). Second, unlike the defendant in *Black*, Defendants knew or should have known the basis for the affirmative defense here even before the start of the litigation. Even if Defendants' counsel did not learn these facts until discovery,

there can be no real dispute here that Fox News should be charged with knowledge of the NJMG-AP licensing arrangement at least as early as July 2013, when Fox News itself took advantage of this arrangement.[5]

For these reasons, the Court finds that Defendants have not shown good cause for the proposed amendments.[6]

---

[5] This conclusion is further supported by the fact that on January 10, 2014, during a pre-motion conference in this action, Plaintiff's counsel stated that the Work has been extensively licensed, and that "[i]f people want to use [the Work] for editorial use, they can buy it." Jan. 10, 2014 Conf. Tr. 10:6-7; see also Pl. Opp. Mem. L. 19.

Additionally, counsel for Defendants attended the trial of the *Cafepress* matter, at which Ms. Borg testified on April 8, 2014—days before the deadline for amended pleadings in this case—that the Work was licensed through the AP.

[6] Even if Defendants had demonstrated good cause, the Court would still deny the motion as futile with respect to the purported Retroactive License. Leave to amend may be denied on the basis of futility where it is "beyond doubt that the plaintiff can prove no set of facts in support of his amended claims." *Pangburn v. Culbertson*, 200 F.3d 65, 70-71 (2d Cir. 1999) (internal quotation marks and citation omitted). An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Rule 12(b)(6). *Dougherty v. N. Hempstead Bd. of Zoning Appeals,* 282 F.3d 83, 88 (2d Cir. 2002); *Commisso v. PricewaterhouseCoopers LLP*, 11 Civ. 5713 (NRB), 2012 WL 3070217, at *2 (S.D.N.Y. July 27, 2012).

In *Davis v. Blige*, 505 F.3d 90, 109 (2d Cir. 2007), *cert. denied*, 555 U.S. 822 (2008), the Second Circuit held that a co-owner of copyrighted songs could not retroactively transfer his interests to a third party in order to extinguish the other co-owner's infringement claims against that third party. While that case involved co-owners of copyrighted works, the court made clear that its holding extended beyond the context of co-ownership: "[W]e hold that a license or assignment in copyright can only act prospectively." *Id.* at 104. In reaching its conclusion, the Second Circuit noted two policy reasons disfavoring retroactive copyright transfers and licenses. *Id.* at 105. First, a rule permitting retroactive assignments and transfers would inject uncertainty and unpredictability into copyright ownership, contrary to the intent of Congress in enacting the Copyright Act. *Id.* Second, retroactive transfers and licenses would lower the cost of infringement to infringers, by providing a cost-free way to cure the violation, thus making infringement more attractive. *Id.* at 106. And as Plaintiff notes, the policy reasons underpinning the court's holding in *Davis* are similarly present in this context. Pl. Opp. Mem. L. 15.

Defendants rely on *Wu v. Pearson Education Inc.*, No. 10 Civ. 6537 (KBF), 2013 WL 145666, at *1 (S.D.N.Y. Jan. 11, 2013), for the argument that retroactive licenses are still enforceable in the Second Circuit post-*Davis*. In *Wu*, the court granted summary judgment for defendant publishing company on the basis that the defendant had a license, including a retroactive license, to use plaintiff photographer's works in its educational materials. *Id.*

Defendants' reliance on *Wu* is unavailing. First, *Wu* was premised on the view that *Davis* stands for the limited proposition that retroactive ratification by one co-owner cannot vitiate another co-owner's infringement claim. *See id.* at *4. As addressed above, however, the Second Circuit's opinion in *Davis* admits of no such limitation. Second, though the court in *Wu* observed that under ordinary circumstances copyright licenses may be granted either prospectively or retroactively, the authorities on which it relied for this principle were specifically distinguished by

**V. Conclusion**

For the reasons set forth above, Defendants' motion to amend their Answers and modify the Civil Case Discovery Plan and Scheduling Order is DENIED. The Clerk of the Court is respectfully directed to terminate the motion. Doc. 46.

It is SO ORDERED.

Dated: March 2, 2015
New York, New York

Edgardo Ramos, U.S.D.J.

the Second Circuit in *Davis* insofar as they involved retroactive licenses granted pursuant to negotiated settlements of infringement claims. *See id.*; *Davis*, 505 F.3d at 101. The purported Retroactive License here was not designed to waive a settling party's accrued claim of liability—the AP is not a party to the instant litigation—but was instead sought in order to cure Fox News' allegedly unauthorized use. Finally, the *Wu* decision was clearly animated by principles of estoppel. There, it was undisputed that the plaintiff authorized his agents to enter into licensing agreements for the use of his photographs, including retroactive agreements, and was paid pursuant to those agreements. He then sought damages for allegedly infringing uses of the same works that he had implicitly authorized his agents to license, and for which uses he had already been paid. This, the court determined, he could not do. *See Wu*, 2013 WL 145666, at *5 ("Wu granted the Photo Agencies, acting on his behalf, the discretion to confer whatever licenses Pearson needed to obtain. Plaintiff cannot now complain of conduct he authorized." (internal citation omitted)).